# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT ANTHONY SMITH,

Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 316224
Wayne Circuit Court
LC No. 12-009631-FC

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of four counts of assault with intent to commit murder, MCL 750.83, first-degree home invasion, MCL 750.110a(2), unlawful imprisonment, MCL 750.349b, intentional discharge of a firearm from a motor vehicle, MCL 750.234a, two counts of carrying a dangerous weapon with unlawful intent, MCL 750.226, two counts of felon in possession of a firearm, MCL 750.224f, two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and assault with intent to do great bodily harm, MCL 750.84.[1] Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 23 to 50 years' imprisonment for each assault with intent to commit murder conviction; 26 years and 8 months to 50 years' imprisonment for the first-degree home invasion conviction; 20 to 50 years' imprisonment for the unlawful imprisonment conviction, each carrying a dangerous weapon with unlawful intent conviction, each felon in possession of a firearm conviction, and the assault with intent to do great bodily harm conviction; 10 to 15 years' imprisonment for the intentional discharge of a firearm from a motor vehicle conviction; and two years' imprisonment for each felony-firearm conviction. We affirm.

---

[1] The assault with intent to do great bodily harm conviction was imposed in connection with a fifth count of assault with intent to commit murder with respect to which the jury found defendant guilty of assault with intent to do great bodily harm as a lesser included offense. Also, the jury found defendant not guilty of two counts of resisting or obstructing, MCL 750.81d(1).

-1-

I.  DEFENDANT'S PRINCIPAL BRIEF ON APPEAL

Defendant first argues that there was insufficient evidence to support his assault with intent to commit murder and first-degree home invasion convictions.  We disagree.

To determine whether there was sufficient evidence to support a conviction, this Court reviews the evidence de novo, in the light most favorable to the prosecutor, to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007).  "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."  *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).  "All conflicts in the evidence must be resolved in favor of the prosecution."  *Id*.  "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime."  *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder."  *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992).  "The intent to kill may be proved by inference from any facts in evidence."  *Id*. (quotation marks, brackets, and ellipses omitted).  "This Court has consistently observed that because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient."  *People v Ericksen*, 288 Mich App 192, 196-197; 793 NW2d 120 (2010) (quotation marks and brackets omitted).  "The use of a lethal weapon will support an inference of an intent to kill."  *People v Ray*, 56 Mich App 610, 615; 224 NW2d 735 (1974).

Defendant contends that there is insufficient evidence to establish his intent to kill for his assault with intent to murder convictions.  He was convicted of four counts of assault with intent to murder, one count with respect to each of the following victims: Quiana Ray, Darryl Moncrease, Detroit Police Officer Jelani Dew, and Detroit Police Officer Adrian Singleton.

With respect to the counts in which Ray and Moncrease were the victims, Teleshia Kirksey testified that, after chasing her on foot around Moncrease's Dodge Charger parked in front of Kirksey's house on Stoepel Street in Detroit, defendant fired a 9 millimeter gun at the Charger driven by Moncrease and in which Ray and Kirksey were passengers, when defendant was within 5 to 10 feet of the vehicle.  Kirksey saw and heard defendant shoot one time at the Charger.  Ray testified that she heard three or four gunshots right by the Charger as it pulled off on Stoepel Street and that defendant was outside the Charger and very close to it at this point.  Detroit Police Officer Raymond Diaz, an evidence technician, examined the Charger and testified that it contained a bullet impact mark on the passenger side of the vehicle and that the metal appeared freshly sheered.  Kirksey testified that, during a later confrontation on Burnet Street, defendant pointed his gun at Moncrease and threatened to kill Ray and Moncrease unless Kirksey left their vehicle and got into defendant's vehicle.  Kirksey testified that defendant shot at a blue car after she got into defendant's vehicle, although she now believes that this blue car was not the blue Charger driven by Moncrease.  Ray likewise testified that defendant threatened to kill Moncrease and Ray during the confrontation on Burnet Street.  Ray heard a gunshot coming from defendant's vehicle as it pulled off on Burnet Street, but Ray did not think defendant was shooting at her.  Moncrease testified that he saw a gun in defendant's hand during

the confrontation on Burnet Street, although defendant did not point the weapon. When defendant pulled off, Moncrease heard three or four shots fired inside defendant's car. According to Moncrease, defendant later fired two or three shots from his vehicle toward the Charger; Moncrease heard the gunshots when defendant's car was the only car on the street, although Moncrease acknowledged telling the police that he did not see defendant firing at him. Moncrease fired back twice. Live rounds of ammunition and a 9 millimeter shell casing were recovered from defendant's vehicle, and the shell casing was determined by a firearm and took mark expert to have been fired in the 9 millimeter gun recovered from the basement of the home on Stoepel Street where defendant was located during his subsequent shootout with police officers.

The above evidence supports a reasonable inference that defendant intended to kill Ray and Moncrease when he fired his gun at the Charger. Although the respective testimonies of Kirksey, Ray, and Moncrease were not entirely consistent with one another regarding precisely when and how many times defendant fired his weapon, it is for the trier of fact to determine the weight of the evidence and the credibility of the witnesses. *Kanaan*, 278 Mich App at 619. All conflicts in the evidence are resolved in favor of the prosecution when reviewing the sufficiency of the evidence. *Id.* The bullet impact mark found on the passenger side of the Charger by an evidence technician further supports the conclusion that defendant fired his weapon at the vehicle. In addition, two firearms, including a 9 millimeter, were found in the basement of Kirksey's home on Stoepel Street where defendant was located during his subsequent shootout with police officers, and those weapons were not in the basement earlier when the police performed a protective sweep of the home. As discussed, a 9 millimeter shell casing matching the 9 millimeter gun was recovered from defendant's vehicle; also, suspected bullet impart marks going from the inside to the outside were found on the roof of defendant's vehicle. Given the testimony that defendant used a lethal weapon by firing a gun at the vehicle occupied by Ray and Moncrease, defendant's threats to kill them, and the physical evidence described above, the evidence supports a reasonable inference that defendant intended to kill Ray and Moncrease.

With respect to the assault with intent to murder charges in which the two police officers, Dew and Singleton, were the victims, Dew testified that while talking to witnesses outside 8854 Stoepel Street regarding the events that morning, Dew and Singleton entered the house. Kirksey then entered the house through the kitchen and indicated that defendant was behind her. As Dew and Singleton turned from the kitchen to the basement, Dew saw defendant standing on a landing area entryway and partly on a step, with a firearm in each hand pointed directly at Dew. Dew immediately thought he was going to be shot and began firing his department issued weapon and moving backward from the threshold of the stairwell past the stove. Singleton also testified that as he and Dew were going toward the steps, Singleton saw defendant standing six to eight feet away at the bottom of the steps holding two firearms, one in each hand. Singleton fired four to five shots and moved backward while shooting, ending up in the rear cabinet area of the kitchen where he could take cover. Dew explained that he fired his weapon because he felt threatened, like he was about to die, as he was looking down the barrel of a weapon. Kirksey testified that she heard one shot in the kitchen and then saw the police officers shooting back a couple times, as the police officers were in the kitchen. Ray similarly testified that she heard one gunshot from the kitchen area in the back and then a round of gunshots in succession.

-3-

As discussed, two firearms were recovered from the basement where defendant was located, including a 9 millimeter gun with a loaded magazine and a fired casing in the chamber and a 22 caliber revolver with a fired casing; those firearms had not been there previously when a protective sweep of the basement was effectuated. A fired bullet was recovered from a bucket underneath the sink; that bullet was later determined by a firearm and tool mark expert to have come from the 9 millimeter gun found in the basement. A 22 caliber bullet recovered from the door frame of the kitchen door had significant damage; testing on whether it came from the 22 caliber revolver recovered from the basement was inconclusive, but the bullet was not consistent with the weapons of the police officers or Moncrease.

The above evidence supports a reasonable inference that defendant intended to kill Dew and Singleton when he fired one or both of his firearms at them. The officers saw defendant holding two firearms, one in each hand, pointed directly at Dew. The officers fired their weapons as they retreated for cover into the kitchen, and the physical evidence supports the conclusion that defendant fired at the officers. Accordingly, a jury could reasonably infer from defendant's use of a lethal weapon that he intended to kill Dew and Singleton. See *Ray*, 56 Mich App at 615.

Next, defendant challenges the sufficiency of the evidence with respect to his first-degree home invasion conviction. The elements of first-degree home invasion are: (1) the defendant either broke and entered a dwelling or entered a dwelling without permission; (2) the defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and (3) while the defendant was entering, present in, or exiting the dwelling, he was either armed with a dangerous weapon or another person was lawfully present in the dwelling. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). Defendant contends that there was no evidence that he broke into the dwelling. Defendant's statement of questions presented suggests that he also seeks to challenge whether he intended when entering to commit an assault in the dwelling. Defendant fails to present an argument on the latter point. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). We will nonetheless address the issue.

"Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking. There is no breaking if the defendant had the right to enter the building." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998) (citation omitted). Kirksey testified that defendant's name was not on the lease agreement for her home and that defendant had no keys or possessory rights to the house. Kirksey explained that at approximately 4:20 a.m. or 4:30 a.m. on July 28, 2012, she and her boyfriend, Brandon Wright, were sleeping on the couch in the living room while her five children were sleeping in the back room on the same floor. Kirksey heard two banging noises on the back door, which was locked. Kirksey explained that the top lock of the door worked, but the bottom lock did not. Kirksey later noticed that the wooden frame on the back door where the lock goes was bent, and it had not been bent like that when she had locked the door. After hearing the banging noises coming from the back door, Kirksey looked up and saw defendant. Defendant walked toward the living room, held his phone up, looked at Wright, and then walked

up the steps toward Kirksey's bedroom. Defendant was not expected or invited there and Kirksey did not want him there. As defendant went up the steps, Kirksey jumped off the couch and ran out of the house through the front door. It is true that Wright's statement indicated only that he heard a noise at the back door and that he and the person who entered exchanged a greeting of "what's up" when the person entered. However, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. "All conflicts in the evidence must be resolved in favor of the prosecution." *Id.* Given Kirksey's testimony that she heard two banging noises coming from the back door, which Kirksey had locked, that Kirksey later noticed damage to the part of the door where the lock goes in, that defendant came in uninvited and unexpected, and that Kirksey did not want him there, sufficient evidence was presented to establish that defendant broke and entered the dwelling.

There was also sufficient evidence that defendant intended when entering the dwelling to commit an assault in the dwelling. Although there is no evidence that defendant actually assaulted anyone in the dwelling, there is evidence that he followed Kirksey outside, chased her around the Charger several times, held his hand by the side of his hip while inserting himself between the rear passenger side door and the body of the car where Kirksey had entered the vehicle, and then fired a 9 millimeter gun at the departing Charger occupied by Kirksey, Ray, and Moncrease. A jury could reasonably infer that defendant intended when entering the dwelling to commit an assault in the dwelling given his possession of the gun, his aggressive actions in following Kirksey outside and chasing her around the Charger, and his firing his gun at the departing Charger. Accordingly, defendant's challenge to the sufficiency of the evidence lacks merit.

Defendant next argues that his sentences constitute cruel or unusual punishment, and makes other related arguments concerning his sentencing. To preserve an argument that a sentence within the appropriate guidelines range constitutes cruel and/or unusual punishment, a defendant must raise grounds for objection at sentencing or in a motion for resentencing. *People v McLaughlin*, 258 Mich App 635, 669-670; 672 NW2d 860 (2003). As discussed later, defendant's sentence is within the appropriate guidelines range. Defendant did not raise grounds for objection at sentencing or move for resentencing. Therefore, the issue is unpreserved. This Court reviews an unpreserved constitutional issue for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To avoid forfeiture of an unpreserved error, a defendant must show that an error occurred, that it was clear or obvious, and that it affected the defendant's substantial rights. *Id.* at 763. An error affects substantial rights if it affects the outcome of the lower court proceedings. *Id.* Once a defendant satisfies these requirements, an appellate court exercises its discretion in deciding whether to reverse by considering whether the plain, forfeited error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 763-764.

Defendant presents a disjointed argument focusing on multiple aspects of his sentencing. Defendant first contends that the guidelines minimum sentence range was incorrect due to inaccurate information that was relied on, and that this constitutes cruel and unusual punishment. Defendant does not identify any allegedly inaccurate information on which the trial court relied. Indeed, defense counsel acknowledged at sentencing that she had reviewed the presentence investigation report with defendant and that it was factually accurate except for an error

-5-

regarding attorney fees, which the trial court struck from the report. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641.

Defendant next contends that he was improperly sentenced as a fourth habitual offender because the felony complaint and warrant sought sentence enhancement with a third habitual offender notice and he was bound over as a third habitual offender. Defendant asserts that the prosecution did not amend its habitual offender notice within 21 days of the arraignment, requiring vacation of the enhanced sentences and a remand for resentencing. This issue may be considered waived because it is not included in defendant's statement of questions presented. *Bennett*, 290 Mich App at 484 n 4. In any event, defendant's argument lacks merit.

MCL 769.13(1) requires the prosecution to file a written notice of its intent to seek habitual offender enhancement within 21 days after the arraignment on the information or, if arraignment is waived, within 21 days after the filing of the felony information. The notice of intent to seek an enhanced sentence must list the prior convictions that the prosecution will rely on for purposes of sentence enhancement. MCL 769.13(2). Likewise, MCR 6.112(F) provides:

**(F) Notice of Intent to Seek Enhanced Sentence.**

A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

In *People v Ellis*, 224 Mich App 752, 755; 569 NW2d 917 (1997), the prosecutor promptly filed a supplemental information charging the defendant with being a second habitual offender, but six weeks later filed an amended supplemental information alleging two additional prior convictions and charging the defendant as a fourth habitual offender. This Court held that a supplemental information may be amended outside the statutory period only to the extent that it does not relate to additional prior convictions not included in the timely filed supplemental information. *Id*. at 757. Because the prosecutor's amendment alleged two additional prior convictions, thereby subjecting the defendant to a greater potential sentence, this Court held that the trial court erred in denying the defendant's motion to quash the amended information. *Id*.

In *People v Siterlet*, 299 Mich App 180, 182; 829 NW2d 285 (2012) (*Siterlet I*), aff'd in part, vacated in part 495 Mich 919 (2013), the prosecution twice amended the felony information to change the defendant's habitual offender level. The prosecution originally charged the defendant as a fourth habitual offender, later amended the felony information during unsuccessful plea negotiations to charge the defendant as a third habitual offender, and then after trial amended the felony information again to increase the habitual offender level to fourth offense status. *Id*. The defendant presented an unpreserved argument on appeal that the trial court erred in sentencing him as a fourth habitual offender, which this Court reviewed for plain error. *Id*. at 184-185. This Court held that the trial court had erred by sentencing the defendant

as a fourth habitual offender because the prosecution filed its second amended felony information to increase the defendant's habitual offender level after the expiration of the 21-day period provided in MCL 769.13(1). *Id*. at 188. Nonetheless, this Court concluded that the error was not plain because no binding precedent established that an amended felony information that decreased the habitual offender level could not later be amended to increase the habitual offender level back to the level originally charged. *Id*. at 190. Further, this Court held that sentencing the defendant as a fourth habitual offender did not seriously affect the fairness, integrity, or public reputation of the proceedings because the factual basis for the defendant's fourth habitual offender status was undisputed, the defendant knew that the prosecution would pursue a fourth habitual offender enhancement after he rejected the prosecution's plea offer, and the defendant had admitted in pleadings that he was charged as a fourth habitual offender. *Id*. at 190-191. "In addition, all references to defendant made by the prosecutor after the jury announced its verdict, in the presentence investigation report, and by the trial court at sentencing were to defendant as a fourth-offense habitual offender, yet defendant remained silent regarding this habitual-offender designation." *Id*. at 191.

In *People v Siterlet*, 495 Mich 919 (2013) (*Siterlet II*), citing *People v Carter*, 462 Mich 206, 220; 612 NW2d 144 (2000), our Supreme Court affirmed the result reached by this Court in *Siterlet I* "because the defendant waived any error in the untimely amendment of the habitual offender enhancement notice by repeatedly admitting his status as a fourth habitual offender. This waiver extinguished any error." Our Supreme Court vacated the portion of this Court's "judgment addressing plain error, because it was unnecessary to decide the case." *Siterlet II*, 495 Mich at 919.

In the present case, defendant was arraigned on the warrant in the hospital on July 30, 2012. During the hospital arraignment, the court advised defendant that he was accused of being a third habitual offender. Likewise, the original felony information filed on July 29, 2012, charged defendant as a third habitual offender, listing two prior felony convictions from 2001; the felony complaint and felony warrant filed on the same date also alleged third habitual offender status. On October 24, 2012, the prosecution filed an amended felony information charging defendant as a fourth habitual offender, adding an additional prior felony conviction from 2003. It appears the additional prior felony conviction from 2003 may have been omitted from the original felony information because defendant had used an alias at the time of his 2003 conviction. At sentencing in this case, the prosecutor explained:

> The defendant has been a scam artist. In '03 when he represented himself by his father's name as Coyer he got a break from the system because we didn't realize he was a felon.
>
> And but for scamming the system he would have been to prison in '03 on FIP, FF. As the Court recalls from the DSU report and from are [sic] previous bonds he's used four or five different names and four different dates of birth.

An arraignment on the information was held on October 24, 2012, at which defendant waived a formal reading of the information and stood mute.

We conclude that the felony information was amended to increase defendant's habitual offender level within the 21-day period set forth in MCL 769.13(1) because the arraignment on the information was held on October 24, 2012, the same date that the amended felony information increasing defendant's habitual offender level was filed. It appears defendant's argument confuses the arraignment on the warrant with the arraignment on the information; it is the arraignment on the information that is relevant in determining whether the amended habitual offender notice is timely. MCL 769.13(1); MCR 6.112(F). The arraignment on the information is different from the arraignment on the complaint or warrant. See MCR 6.104; MCR 6.113. The arraignment on the information occurs after the preliminary examination. See MCR 6.113(A) (noting that "the court with trial jurisdiction must arraign the defendant" and that "[t]he court may hold the arraignment before the preliminary examination transcript has been prepared and filed."); *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) ("After the preliminary examination, the circuit court was required to conduct an arraignment on the information at which the court would notify defendant of the charges against him and allow him to enter a plea."). The preliminary examination in this case, which was adjourned by stipulation and then held over several dates, was not completed until October 12, 2012, the date on which defendant was bound over to circuit court. The circuit court then conducted the arraignment on the information on October 24, 2012. Accordingly, defendant's challenge to the timeliness of the habitual offender amendment is premised on his misunderstanding of the type of arraignment used to determine the 21-day period in which such an amendment must be filed.

Even if the habitual offender notice was amended untimely, defendant waived any error. Defendant did not object below to the allegedly untimely amendment of the felony information to charge him as a fourth habitual offender. Moreover, at sentencing, defense counsel stated that she had reviewed the presentence investigation report with defendant and agreed that it was factually accurate except for an error regarding attorney fees, which the trial court stated would be struck from the report. Defense counsel asked that defendant be sentenced within the recommended guideline range of 225 to 750 months. The presentence investigation report indicated that defendant was charged as a fourth habitual offender, stated that he had three prior felony convictions, and listed the same three prior felony convictions that were set forth in the amended felony information as the basis for the fourth habitual offender charge. Further, the 225 to 750 month guideline range that defense counsel asked that defendant be sentenced within was calculated on the basis of defendant's status as a fourth habitual offender.

Accordingly, because (1) defendant admitted at sentencing that the information in the presentence investigation report was accurate; (2) the presentence investigation report reflected that defendant was charged as a fourth habitual offender, stated that he had three prior felony convictions, and listed the same three prior felony convictions that were set forth in the amended felony information as the basis for charging defendant as a fourth habitual offender; and (3) defense counsel asked for a sentence within the guideline range calculated on the basis of defendant's fourth habitual offender status, defendant waived any error in the untimely amendment of the habitual offender enhancement notice because he admitted his status as a fourth habitual offender. Defendant's waiver thereby extinguished any error. See *Siterlet II*, 495 Mich at 919; *Carter*, 462 Mich at 220.

Next, defendant asserts that the offense variables for his first-degree home invasion conviction should have been scored independently from the offense variables for his assault with

intent to commit murder convictions. Defendant says that the offense variables for first-degree home invasion were incorrectly scored in the same manner as the offense variables for assault with intent to commit murder. He also states that he is challenging the scoring of offense variables 1, 2, 8, 9, and 19 for the first-degree home invasion conviction. This issue is not included in defendant's statement of questions presented. Moreover, defendant fails to adequately present a coherent rationale for his asserted positions. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. . . ." *Kelly*, 231 Mich App at 640-641. Hence, this argument may be deemed waived. *Bennett*, 290 Mich App at 484. Further, defendant failed to preserve this issue by raising it at sentencing, in a proper motion for resentencing, or in a proper motion to remand. MCL 769.34(10); *People v Jackson*, 487 Mich 783, 795-796; 790 NW2d 340 (2010). Any review is therefore limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Defendant's contention lacks merit because it is premised on an erroneous assumption that the trial court was required to score the offense variables for first-degree home invasion. When a defendant is sentenced to multiple concurrent sentences, a trial court is required to use at sentencing a presentence investigation report covering the defendant's conviction for the crime having the highest crime class. *People v Mack*, 265 Mich App 122, 127-128; 695 NW2d 342 (2005). The guidelines do not need to be scored for the lower crime class offenses because presentence investigation reports and guideline calculations are required only for the highest crime class felony conviction. *People v Lopez*, 305 Mich App 686, 690-691; 854 NW2d 205 (2014). Assault with intent to commit murder is a Class A felony, MCL 777.16d, whereas first-degree home invasion is a Class B felony, MCL 777.16f. Therefore, the trial court properly scored the guidelines for assault with intent to commit murder because it is the highest crime class felony conviction and defendant received concurrent sentences for the convictions at issue. *Id*. Defendant's argument that the trial court was required to independently score the guidelines for first-degree home invasion lacks merit.

We note that this Court in *Mack* and *Lopez* questioned whether a sentence for a lower crime class felony conviction that is not scored under the guidelines could remain proportional if it exceeds the sentence imposed on the highest crime class felony conviction. See *Lopez*, 305 Mich App at 692; *Mack*, 265 Mich App at 129. Defendant's minimum sentence of 26 years and 8 months for first-degree home invasion exceeded his minimum sentences of 23 years for each of his assault with intent to commit murder convictions. However, defendant's sentences for both of these offenses are within the guidelines range of 225 to 750 months. Further, defendant does not contend that the first-degree home invasion sentence is disproportional on the ground suggested in *Lopez* and *Mack*. Instead, he argues that the trial court was required to independently score the guidelines for this offense and that there was no evidentiary support for the trial court's scoring of the guidelines for first-degree home invasion. Because, as discussed, the trial court was required to score the guidelines only for the assault with intent to commit murder convictions, and because there was no scoring by the trial court of the guidelines for

first-degree home invasion with respect to which defendant could challenge the evidentiary support, defendant's argument lacks merit.[2]

Next, defendant contends that his minimum sentence for first-degree home invasion constitutes a departure based on what defendant claims is the correct calculation of the guidelines range for that offense. This argument is waived because it is not included in the statement of questions presented. *Bennett*, 290 Mich App at 484. As discussed, the trial court was not required to, and in fact did not, score the guidelines for first-degree home invasion. Defendant's argument that the minimum sentence for first-degree home invasion constitutes a departure from the guidelines range for that offense is therefore based on an erroneous premise and lacks merit.

Finally, defendant contends that because of his age of 30 years, what he characterizes as his serious health problems[3], and his view of the quality of the evidence presented at trial, the sentences imposed in this case comprise cruel or unusual punishment. "However, a sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment." *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008) (citations omitted). Defendant's minimum sentences are within the guidelines range of 225 to 750 months. Indeed, defense counsel at sentencing requested that defendant be sentenced within the guidelines range of 225 to 750 months. As discussed, defendant's challenge to the sufficiency of the evidence at trial, on which he again relies in his contention that the sentences constitute cruel or unusual punishment, is devoid of merit. Defendant fails to offer a convincing reason to conclude that his age or his purported health problems should overcome the presumption that his sentences within the guidelines range are proportionate.

## II. DEFENDANT'S SUPPLEMENTAL BRIEF ON APPEAL

Defendant argues that he and his attorney were excluded from a competency hearing in violation of defendant's constitutional rights. We disagree. A defendant must raise a constitutional challenge in the trial court to preserve the issue for appellate review. *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). Defendant did not raise any constitutional challenge below with respect to his purported exclusion from a competency

---

[2] We note that the prosecution scored the guidelines for first-degree home invasion in its sentencing memorandum. Also, the minimum sentence of 26 years and eight months imposed by the trial court for first-degree home invasion is at the top end of the guidelines range for that offense as calculated by the prosecutor. Nonetheless, the trial court did not state that it was calculating the guidelines for first-degree home invasion, and the court's sentencing information report calculated the guideline range only for assault with intent to commit murder.

[3] Defendant was shot while committing the present offenses, was arraigned at a hospital, sat in a wheelchair at trial, and remained seated during his allocution because he had "reinjured [his] leg." In the presentence investigation report, defendant stated that he was taking medications as a result of being shot in the stomach in this case, and he asserted that he suffered nerve damage in his left leg and was using a walker. The record is not further developed regarding the exact nature or extent of defendant's purported ongoing health problems.

hearing. Therefore, the issue is not preserved and our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

A criminal defendant has a constitutional right to be personally present at all critical stages of a trial. *Rushen v Spain*, 464 US 114, 117; 104 S Ct 453; 78 L Ed 2d 267 (1983). Further, the Sixth Amendment of the United States Constitution guarantees a criminal defendant facing incarceration the right to counsel at all critical stages of the criminal proceeding. *United States v Cronic*, 466 US 648, 659; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). The United States Supreme "Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 US at 659 n 25. Every lower federal court to consider the issue has found that a competency hearing is a critical stage of the criminal process. See *United States v Ross*, 703 F3d 856, 873-874 (CA 6, 2012).[4]

Defendant contends that he and his attorney were excluded from a competency hearing that was held in the 36th District Court on August 8, 2012, before defendant was bound over to circuit court. The record does not support this contention. It is true that the circuit court register of actions has an entry for August 8, 2012, indicating that a motion hearing and a competency hearing were held, and there is a reference to an unspecified adjournment on that date.[5] There are no other motions, orders, or other documents in the lower court file to suggest that a competency hearing was held or that the court made any determination of competency at such a hearing. The district court register of actions does not indicate that a competency hearing was held on August 8, 2012; the entry for that date instead refers to the continuation of defendant's bond and the adjournment of the preliminary examination.

Moreover, in connection with defendant's effort to obtain a transcript of the purported August 8, 2012 competency hearing, a court reporter submitted to this Court a certificate dated October 30, 2014, stating that there was no record to be transcribed for August 8, 2012. On November 26, 2014, this Court entered an order addressing the fact that there was no record of proceedings held on August 8, 2012; this Court's order stated, in relevant part:

> By order entered on September 11, 2014, the Court granted defendant-appellant's request for an extension of time to file a supplemental brief and directed the trial court to secure the filing of transcripts of a July 30, 2012,

---

[4] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

[5] It appears the reference in the register of actions to an adjournment concerns the preliminary examination; the district court entered a stipulated order on August 8, 2012, adjourning the preliminary examination from August 10, 2012, to August 23, 2012, because defense counsel was seeking additional discovery and because defendant was still recovering from his gunshot wound and may otherwise have been unable to participate in his defense.

-11-

arraignment and an August 8, 2012, competency hearing and mail the transcripts to defendant. The Court has subsequently received a court reporter's certificate stating that there is no record of proceedings held on August 8, 2012, and the Court has recently received from the trial court transcripts of two arraignment proceedings held on July 30, 2012, and a proceeding held on August 23, 2012. Defendant states in the instant motion to extend time that he has not yet received the transcripts of the July 30, 2012, arraignment and the August 8, 2012, competency hearing. However, the court reporter now indicates there is no record of proceedings held on August 8, 2012. . . . [*People v Smith*, unpublished order of the Court of Appeals, entered November 26, 2014 (Docket No. 316224).]

Accordingly, despite the vague entry in the circuit court's register of actions, the record overall does not establish that a competency hearing was held on August 8, 2012. Even if such a hearing was held, there is no indication that defendant and his attorney were excluded from any such hearing. Further, as discussed, there is no other indication in the record of any competency hearing or determination. Therefore, defendant has not established that he was denied his rights to be present or to the assistance of counsel at a critical stage of the proceedings.

It appears defendant also suggests that his due process rights were violated because the trial court failed to have him evaluated for competency. Defendant does not present a coherent argument on this point. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Further, this issue may be considered waived because it is not included in defendant's statement of questions presented. *Bennett*, 290 Mich App at 484. In any event, defendant's contention lacks merit. "A claim of incompetency to stand trial, and the right to a competency determination, implicates constitutional due process protections. Issues of constitutional law are reviewed de novo." *In re Carey*, 241 Mich App 222, 225-226; 615 NW2d 742 (2000) (citation omitted). "The conviction of an individual when legally incompetent violates due process of law." *Id*. at 227. "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000). In the absence of a defense request, the trial court generally does not have a duty to order a competency hearing sua sponte. See *People v Inman*, 54 Mich App 5, 12; 220 NW2d 165 (1974). But a court should raise the issue of incompetence when facts are brought to the court's attention raising a "bona fide doubt" regarding the defendant's competence. *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). In this case, defendant did not request a competency hearing or indicate an inability to understand the proceedings or assist his attorneys. There is no indication that any facts were brought to the trial court's attention raising a bona fide doubt regarding defendant's competence. Therefore, the failure to hold a competency hearing did not deprive defendant of due process.

Defendant next asserts that he was denied a fair trial on the basis of purported prosecutorial misconduct. We disagree. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *Bennett*, 290 Mich App at 475. Here, defendant failed to contemporaneously object or request a

curative instruction with respect to the alleged instances of prosecutorial misconduct. Accordingly, this issue is unpreserved.

> Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context.
>
> Unpreserved issues are reviewed for plain error affecting substantial rights. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect. [*Id.* at 475-476 (internal quotation marks, brackets, and citations omitted).]

A prosecutor may not vouch for the credibility of witnesses to suggest some special knowledge that the witnesses are testifying truthfully. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). A prosecutor may, however, argue from the facts and testimony that the witnesses are credible or worthy of belief. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). In general, prosecutors are accorded wide latitude in making their arguments, "and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

A prosecutor need not confine arguments to the blandest possible terms. *Dobek*, 274 Mich App at 66. It is improper, however, for a prosecutor to express a personal belief in the defendant's guilt. *Seals*, 285 Mich App at 24. "A prosecutor's remarks must be considered in light of defense arguments." *People v Ackerman*, 257 Mich App 434, 453-454; 669 NW2d 818 (2003) (internal quotation marks and citation omitted). Otherwise improper remarks may not rise to the level of error requiring reversal if the remarks were responsive to defense counsel's argument. *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

The prosecutor may not imply that the defendant is required to prove something or to provide a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010) (citation omitted). "However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Id.* at 464 (citations omitted).

The prosecutor may not personally attack defense counsel. *McLaughlin*, 258 Mich App at 646. Nor may a prosecutor suggest that defense counsel is intentionally attempting to mislead the jury. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). The prosecutor also may not appeal to the jury to sympathize with the victim or urge the jury to convict as part of its civic duty or on the basis of prejudices. *Id.* at 237. A prosecutor may not knowingly use perjured testimony to obtain a conviction. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

Defendant contends that the prosecutor improperly referred to defense counsel as a "word smith" and stated that defense counsel was misleading the jury with "diversionary tactics." According to defendant, the prosecutor accused defense counsel of wrongfully attacking prosecution witnesses by questioning their truthfulness and by pointing out inconsistencies between witnesses' testimonies at trial and their prior testimonies. Defendant asserts that the prosecutor vouched for his witnesses' credibility and made excuses for what defendant calls their "perjured" testimony by explaining why their testimonies changed from earlier statements or testimonies. We disagree with defendant's argument.

As discussed, a prosecutor's remarks must be reviewed in context, *Bennett*, 290 Mich App at 475, and in light of defense arguments, *Ackerman*, 257 Mich App at 453-454. With respect to the prosecutor's purported reference during closing argument to defense counsel as a "word smith," the full context of the prosecutor's remarks is as follows:

> I'm going to begin by some general comments about a very skilled lawyer. And I'm referring to Mr. Upshaw [defense counsel]. Understand that lawyers are word smiths.
>
> Our tool box does not have the a [sic] wrench or a saw or a hammer in it our tool box is our vocabulary [sic]. Our tool box is an ability to talk to individuals and express ourselves.
>
> You heard testimony from two ladies that Mr. Smith the defendant in this case used those words b---- let my wife out of the car before I kill you and this wh--- a-- n-----.
>
> Mr. Upshaw dealt with that describing it as a derogatory remark. That is a statement of intent. That is a statement of intent to kill.
>
> Nothing personal towards him this is how things progressed [sic]. This is what we're talking about.

It appears this comment by the prosecutor during closing argument was responsive to the following portion of defense counsel's opening statement:

> You have to as a matter of fact intend to kill somebody. So the car drives down the street stops as Mr. Trzcinski [the prosecutor] stated they said a few minutes the car my client's car pulls up looks over to the blue charger and says hey I want to talk to my wife or whatever derogatory saying he was saying about trying to talk to Ms. Kirksey [sic].

As the above quotes make clear, defense counsel asserted in his opening statement that defendant made a "derogatory saying" when demanding that Kirksey enter his vehicle. In closing argument, the prosecutor expressed disagreement with defense counsel's characterization of defendant's comment as a mere derogatory remark and argued that it instead comprised a statement of defendant's intent to kill. The prosecutor did not personally attack defense counsel. The prosecutor's remarks were responsive to defense counsel's opening statement and

constituted an appropriate argument concerning reasonable inferences from the evidence as they related to the prosecution's theory of the case. *Seals*, 285 Mich App at 22.

Defendant asserts that the prosecutor improperly suggested that defense counsel was misleading the jury with diversionary tactics. Defendant fails to provide a citation to the record to support this assertion. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Norman*, 184 Mich App 255, 260; 457 NW2d 136 (1990). See also MCR 7.212(C)(7) ("Facts stated must be supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court."). We do not find in the transcript any such statement by the prosecutor in closing argument.

According to defendant, the prosecutor stated that defense counsel wrongfully attacked several prosecution witnesses by questioning their truthfulness and pointing out inconsistencies with prior testimony. Defendant also contends that the prosecutor vouched for his witnesses' credibility and made excuses for what defendant characterizes as their "perjured testimony." Again, defendant does not cite to the portion of the record in which any such statements occurred. Our review indicates that the prosecutor made no such statements and did not engage in improper vouching. Rather, the prosecutor appropriately argued from the evidence that his witnesses were worthy of belief. *Dobek*, 274 Mich App at 66. The prosecutor did not improperly vouch for his witnesses by suggesting he had some special knowledge concerning their truthfulness. *Bahoda*, 448 Mich at 276. Defendant fails to support his characterization of the prosecution witnesses' testimony as perjured. Defendant does not identify the specific testimony that supposedly constitutes perjury, nor does defendant elaborate on exactly how he thinks the prosecutor made excuses for the alleged perjury. The fact that certain prosecution witnesses may have testified inconsistently in some respects does not by itself establish that those witnesses committed perjury, see *People v Kozyra*, 219 Mich App 422, 429; 556 NW2d 512 (1996), let alone that the prosecutor knew that they committed perjury. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619.

Defendant next challenges several comments that the prosecutor made during rebuttal closing argument. Defendant notes that the prosecutor stated that defense counsel "said nothing about unlawful imprisonment. And the unlawful imprisonment has been proven." This comment did not tend to shift the burden of proof. The prosecutor correctly observed that defense counsel did not discuss unlawful imprisonment; the prosecutor then immediately stated that "the unlawful imprisonment has been proven," reflecting that the prosecution had the burden of proof to establish unlawful imprisonment even though defense counsel did not address it.

Defendant complains about comments made by the prosecutor concerning the reason why defendant went upstairs in Kirksey's home following his initial entry into the home that morning. The prosecutor's remarks in context are:

> The um, claim that he was went [sic] upstairs for the kids Ms. Kirksey said they routinely slept in the first floor bedroom.

That claim has no evidentiary support. Mr. UpShaw's [sic] claim that he his client went upstairs because of the children is contrary to with [sic] what Ms. Kirksey testified to.

The trust [sic] of what counsel is suggesting is to do something that I suggest you shouldn't do. Mr. Smith selected all of the witnesses that testified in this case.

These comments did not tend to shift the burden of proof. The prosecutor argued from the evidence, including Kirksey's testimony, in favor of the prosecution theory that defendant went upstairs for reasons that were unrelated to his children. Proper commentary concerning the weaknesses of a defense theory does not shift the burden of proof or comprise prosecutorial misconduct. See *Fyda*, 288 Mich App at 464-465. The comment about defendant selecting all of the witnesses was based on the prosecutor's explanation that the witnesses were chosen not by the prosecutor but were determined by the events that defendant set in motion during the criminal transaction. Defendant does not explain why he believes such a comment is improper.

Next, defendant complains about the prosecutor's statement that defense counsel had elevated the prosecutor's burden of proof. The prosecutor's remarks in context were as follows:

Now let's talk about creativeness. Applying Mr. UpShaw's [sic] analysis because the two officers in the kitchen don't see muzzle flashes therefore it can't be an AWIM.

Does [sic] the elements of assault with intent to murder require the victim to see the shoots [sic]? Heaven forbid open season on everybody blind.

Mr. UpShaw [sic] has elevated the version of the burden that the People have. The People can't prove this so we'll say that they have to.

And God help everybody that's blind and shot by themselves. Your defendant and your charge was [sic] waiting for who every [sic] came to that doorway.

Defense counsel had argued in closing that Dew and Singleton did not see muzzle flashes when defendant fired his gun; the prosecutor argued in response that the prosecutor was not required to prove that the victim of an assault saw the shots being fired. In light of the defense arguments, the prosecutor's argument was not improper.

Defendant asserts that the prosecutor shifted the burden of proof on unlawful imprisonment by stating, "Uncontested count of unlawful imprisonment, home invasion, because he wasn't there at 4:30 in the morning for peaceful purposes." This comment is properly read in context as related to the earlier statement in which the prosecutor asserted that defense counsel had not addressed unlawful imprisonment in closing and that the charge of unlawful imprisonment had been proven. The prosecutor's comments overall reflect that the prosecutor had the burden of proof. Again, "a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the

-16-

evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence." *Fyda*, 288 Mich App at 464 (citations omitted).

Defendant challenges the prosecutor's statement in rebuttal closing argument that "I did predict one thing before the lunch we divide and conquer that's what was the attempt [sic]. And this proverb still holds true layer upon layer of multiple sources." It appears the prosecutor was referring to comments made near the end of his initial closing argument in which the prosecutor was suggesting what the defense might argue in closing:

> The felon in possession charge the felony firearm charge all of those weapons offenses I expect that you will hear divided testimony of the first lady witness Ms. Kirksey you can't believe her because of X, Y and Z [sic].

> You can't believe her because of XY and Z. Each witness is a layer. Each witness Ms. Ray, Mr. Wright, Mr. Moncrease and combined the African proverb something as easy to remove a spider web when layer upon layer upon layer gathers strength to the extent it can be [sic] trap one of the most ferocious animals perhaps one of the most ferocious animals that God put on the planet [sic].

Defendant fails to explain why he thinks the prosecutor's remarks in rebuttal were improper. It appears the rebuttal comments were in response to the defense effort to highlight the inconsistent aspects of the prosecution witnesses' testimonies. The prosecutor characterized this defense strategy as "divide and conquer" and apparently analogized the prosecution witnesses' testimonies to layers in a spider web discussed in a proverb. A prosecutor need not confine arguments to the blandest possible terms. *Dobek*, 274 Mich App at 66. The argument was not improper.

Defendant asserts that the prosecutor appealed to the jury to sympathize with the alleged victims and to the jurors' sense of civic duty by vouching for their testimony and arguing that the jury should disregard earlier statements or testimony. Defendant also contends that the prosecutor vouched for Moncrease's testimony even though he initially failed to tell police officers that he possessed and discharged a firearm through his car window; according to defendant, the prosecutor made excuses for why Moncrease was not charged with any crimes. Defendant fails to support these contentions with specific citations to the record. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *Norman*, 184 Mich App at 260. As discussed, our review indicates that the prosecutor did not impermissibly vouch for any prosecution witnesses. Nor do we find any appeals to sympathy or civic duty. The prosecutor properly argued from the facts and testimony that his witnesses were credible or worthy of belief. *Dobek*, 274 Mich App at 66.

Finally, even if any of the prosecutor's comments were improper, defendant has failed to establish that a timely curative instruction could not have alleviated any prejudice. *Bennett*, 290 Mich App at 476. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Seals*, 285 Mich App at 22. And although defendant did not request a curative instruction, the trial court instructed the jury that the lawyers' statements and arguments were not evidence and that the jury should decide the case based only on the evidence admitted at trial. In addition, the trial court instructed the jury that the

prosecution had the burden to prove each element of the crimes beyond a reasonable doubt and that defendant was not required to prove his innocence or to do anything. The trial court also instructed the jury that it must not let sympathy or prejudice influence its decision. These instructions dispelled any potential prejudice with respect to the alleged prosecutorial misconduct. See *People v Parker*, 288 Mich App 500, 512; 795 NW2d 596 (2010); *Fyda*, 288 Mich App at 465; *People v Ullah*, 216 Mich App 669, 682-683; 550 NW2d 568 (1996). "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998); *Fyda*, 488 Mich App at 465. Thus, defendant has failed to establish that a plain error affected his substantial rights in connection with his unpreserved prosecutorial misconduct claim.

Defendant next argues that he was denied the effective assistance of counsel. We disagree. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant did not file either such motion. Therefore, the issue is unpreserved. Because defendant did not preserve this issue, this Court's review is limited to mistakes apparent on the existing record. *Id*. "A claim of ineffective assistance of counsel is a mixed question of law and fact." *Id*. This Court reviews any findings of fact for clear error, but the ultimate constitutional issue arising from an ineffective assistance claim is reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *Ackerman*, 257 Mich App at 455. "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Petri*, 279 Mich at 411. This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *Id*. The fact that a defense strategy ultimately fails does not establish ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks omitted). A defense is substantial if it might have made a difference in the outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *Russell*, 297 Mich App at 716. A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

-18-

Defendant first contends that he and his stepfather asked defense counsel to retrieve and review video surveillance footage allegedly showing that on the date of the incident, defendant and Kirksey stopped at a gas station and defendant left Kirksey alone in the vehicle for a substantial amount of time. Defendant claims that defense counsel failed to comply with this request. Defendant appends to his supplemental brief on appeal an affidavit of his stepfather repeating these allegations. This affidavit is not part of the lower court record, which is devoid of any support for defendant's allegations. There is no evidence in the record that defendant and Kirksey stopped at a gas station on the date of the incident, that defendant left Kirksey alone in the vehicle for a substantial period of time, that video footage of such an event exists, that defendant or his stepfather asked defense counsel to retrieve and review the video footage, or that defense counsel failed to investigate the matter or seek to obtain the video. Even if the affidavit of defendant's stepfather is accepted, it does not establish how defendant or his stepfather could know whether defense counsel failed to seek to obtain any purported video footage. Defendant has failed to support the contention that defense counsel performed an inadequate investigation. See *Odom*, 276 Mich App at 417 (rejecting an ineffective assistance claim where defense counsel's alleged failure to properly investigate a case was not apparent from the record).

Defendant next contends that defense counsel before and during trial failed to give him discovery materials obtained from the prosecution. Defendant claims that he requested the discovery materials from defense counsel from the time that counsel was retained. Defendant states that he has received some materials from defense counsel but not the items he requested, including unspecified laboratory reports, his medical records, ballistic reports, and preliminary examination transcripts. Defendant asserts that it is possible that items in the discovery package could have been favorable to the defense and that without seeing the items he could not direct defense counsel or an investigator concerning what other evidence might exist. Given the allegedly limited materials possessed by defense counsel, defendant questions whether defense counsel ever requested discovery. Defendant appends to his supplemental brief on appeal his written correspondence with defense counsel after this appeal was filed and his affidavit that the facts alleged in his supplemental brief are true. Defendant's contentions have no basis in the record. There is no support in the record for defendant's claim that he asked defense counsel for his discovery materials[6], that defense counsel failed to provide defendant any discovery materials that he requested, or that defense counsel failed to request discovery[7]. Therefore, defendant has not established the factual predicate for this portion of his ineffective assistance claim. *Carbin*, 463 Mich at 600. Defendant's mere speculation that discovery materials may have led to

---

[6] Even if this Court considers the correspondence appended to defendant's supplemental brief, it is dated after defendant filed his appeal and does not establish that defendant requested the materials from defense counsel before or during trial or that defense counsel failed to provide discovery materials.

[7] The record contains an August 23, 2012 order granting discovery of various items to defense counsel, although this order did not pertain to all of the materials that defendant addresses on appeal.

evidence favorable to the defense fails to establish a reasonable probability of a different outcome.

Defendant next contends that evidence is available concerning the credibility of Dew and Singleton. In particular, defendant states that there is useful information in a federal civil lawsuit in which Dew and Singleton were the defendants who shot and killed the plaintiff in that case. Defendant states that he is investigating this and other cases purportedly involving Dew and Singleton tampering with, destroying, or planting evidence. Defendant does not explain precisely how he thinks defense counsel should have used this information in defendant's case. Defendant offers no theory of relevance concerning how this information could have been used at trial, nor does defendant articulate how this information would make a different outcome reasonably likely in light of the evidence of guilt discussed earlier. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims. . . ." *Kelly*, 231 Mich App at 640-641. Further, the unpublished opinion in the federal lawsuit against Dew and Singleton is not part of the record, and the record does not support defendant's allegations of purported misconduct on the part of Dew and Singleton. Defendant has not established the factual predicate for his claim. *Carbin*, 463 Mich at 600.

Defendant next argues that defense counsel was ineffective for failing to object to the prosecutor's misconduct during closing argument as summarized earlier and failing to seek to cure the prejudice arising from the prosecutor's impermissible comments. As discussed, the prosecutor did not commit misconduct. Defense counsel was not ineffective for failing to advance meritless arguments or raise futile objections. *Ericksen*, 288 Mich App at 201.

Next, defendant presents an incomprehensible argument that the prosecutor and the trial court erroneously suggested to the jury that it "consider either the first time or the second time to find [defendant], guilty of home invasion and the charged [assault with intent to commit murder] against Mr. Moncrease, Ms. Kirksey, and Ms. Ray." Defendant asserts that an instructional error occurred and that defense counsel was ineffective for failing to object or request a curative instruction. We do not know what defendant means when he says that the prosecutor and the trial court stated that the jury may "consider either the first time or the second time" to find defendant guilty. Defendant fails to cite to the portion of the transcript in which any such comments were made. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *Norman*, 184 Mich App at 260. We are unable to analyze this argument further given that it is unclear what defendant is challenging.

Defendant again requests an evidentiary hearing on his claim of ineffective assistance of counsel. This Court already denied defendant's motion to remand for an evidentiary hearing on ineffective assistance of counsel because defendant did not properly demonstrate that further factual development of the record or an initial decision of the trial court was necessary. See *People v Smith*, unpublished order of the Court of Appeals, entered September 4, 2014 (Docket No. 316224). Defendant fails to address this order or to elaborate on why a remand should be granted now despite this Court's previous order. Defendant may not merely announce his

position and leave it to this Court to discover and rationalize the basis for his renewed request. *Kelly*, 231 Mich App at 640-641.

Defendant next argues that a delay in his arraignment following his warrantless arrest deprived him of due process. We disagree. A defendant must raise a constitutional challenge in the trial court to preserve the issue for appellate review. *Hogan*, 225 Mich App at 438. Defendant did not raise this issue below. Therefore, the issue is unpreserved and our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

First, this issue is waived because it is not included in defendant's statement of questions presented. *Bennett*, 290 Mich App at 484 n 4. Second, defendant fails to present a coherent argument, instead making a series of random assertions that are difficult to follow. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. We will attempt to address defendant's argument to the extent possible.

Defendant contends that he never received a probable cause hearing and was arraigned in the hospital after the 48-hour time limit had expired. In *People v Whitehead*, 238 Mich App 1, 2; 604 NW2d 737 (1999) (quotation marks and brackets omitted), this Court explained:

> In *Riverside Co v McLaughlin*, 500 US 44, 56; 111 S Ct 1661; 114 L Ed 2d 49 (1991), the United States Supreme Court held that, following an arrest without a warrant, a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, be found to comply with the promptness requirement of the federal constitution's Fourth Amendment. Police authorities who hold an arrestee for more than forty-eight hours without an arraignment can constitutionally do so only if they can demonstrate the existence of a bona fide emergency or extraordinary circumstance that would justify the delay.

"A prompt judicial determination of probable cause for an arrest is one of the most important protections afforded citizens under the Fourth Amendment's prohibition of unreasonable seizures. To assure that protection, the forty-eight-hour rule established by *Riverside* must be carefully observed by police authorities." *Whitehead*, 238 Mich App at 14 (quotation marks and citation omitted). If a defendant is arraigned more than 48 hours after arrest, the delay is presumptively unreasonable absent extraordinary circumstances. *People v Cain*, 299 Mich App 27, 49; 829 NW2d 37 (2012), aff'd in part, vacated in part on other grounds 495 Mich 874 (2013). "The exclusionary rule applies whenever a statutorily unlawful detention has been employed as a tool to directly procure *any* type of evidence from a detainee. However, while an improper delay in arraignment may necessitate the suppression of evidence obtained as a result of that delay, the delay does not entitle a defendant to dismissal of the prosecution." *Id.* (quotation marks, brackets, and citation omitted).

Defendant committed the crimes in this case in the early morning hours of July 28, 2012, and he was arrested without a warrant before he was taken to the hospital by EMS that morning. Because defendant did not raise this issue below, the exact time of arrest is not indicated in the

record, although it was apparently before 10:00 a.m. because the police officer who accompanied defendant to the hospital testified that she remained at the hospital with defendant until approximately 10:00 a.m. that morning. On July 29, 2012, a magistrate signed a felony warrant finding that there was probable cause to believe that the charged offenses were committed and that defendant committed the offenses and commanding that defendant be arrested and brought before the court immediately. The felony complaint was filed on July 29, 2012, and it was signed by the magistrate. Defendant's arraignment was held in the hospital on July 30, 2012, at 11:14 a.m. It therefore appears that the arraignment was held slightly more than 48 hours after defendant was arrested. "However, the proper remedy for this delay is the suppression of any evidence directly procured as a result of that delay." *Id*. at 49. Defendant does not specify any evidence that was allegedly procured by his unlawful detention. The record does not indicate that any evidence was procured during this short period. Rather, the evidence was recovered from the crime scene in the hours after defendant's arrest. No evidence was obtained as a result of the alleged undue delay. "Because there was no evidence to suppress, the delay in defendant's arraignment was not outcome-determinative, and he is not entitled to relief on this issue." *Id*. at 50.

Defendant makes various other assertions in his argument on this issue, including that he was improperly identified by name in the hospital arraignment procedure without a witness, that the denial of his motion to quash the information deprived him of due process, and that he should not have been compelled to testify as a witness against himself. These claims are waived because they are not included in defendant's statement of questions presented. See *Bennett*, 290 Mich App at 484 n 4. Also, defendant offers no elaboration concerning what he means by any of these allegations. It is not this Court's role to discover and rationalize the basis for an appellant's claims. *Kelly*, 231 Mich App at 640-641. We do not know what defendant means by his assertion that he was improperly identified by name in the hospital arraignment procedure without a witness. Defendant does not explain when or how he was allegedly compelled to testify as a witness against himself; he did not testify at trial. Defendant does not articulate why he thinks the denial of his motion to quash the information[8] deprived him of due process. Given the complete lack of elaboration, we find it impossible to review these bare assertions.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

---

[8] The motion to quash the information challenged the sufficiency of the evidence to support the bindover for first-degree home invasion and unlawful imprisonment.