PEOPLE v HOGAN

Docket No. 193769. Submitted January 15, 1997, at Detroit. Decided September 16, 1997, at 9:10 A.M.

Belinda J. Hogan pleaded guilty in the Monroe Circuit Court, Michael W. LaBeau, J., of uttering and publishing and was sentenced to 1½ to 14 years of imprisonment, to be served consecutively to a sentence from which the defendant, at the time of the offense in this case, was on parole following an earlier conviction of uttering and publishing. The defendant appealed, claiming, among other things, that she cannot be convicted properly of uttering and publishing for paying for groceries with a check she signed with a fictitious name and drawn on an account that she had opened under the fictitious name.

The Court of Appeals *held*:

1. A person who utters and publishes as true a false, forged, altered, or counterfeit record, deed, instrument, or other writing mentioned in MCL 750.248; MSA 28.445, knowing the same to be false, altered, forged, or counterfeit, with intent to injure or defraud, is guilty of uttering and publishing. MCL 750.249; MSA 28.446. In this case, the defendant published an instrument she knew to be false when she presented her check to the grocer.

2. The defendant's minimum sentence is within the range recommended by the sentencing guidelines and is therefore presumptively proportionate. The defendant did not present any unusual circumstances that would overcome that presumption.

3. By not raising it in the trial court, the defendant has failed to preserve for appellate review the claim that the statute that requires consecutive sentencing for reoffending parolees, MCL 768.7a(2); MSA 28.1030(1)(2), violates equal protection and constitutes cruel and unusual punishment under the federal and state constitutions.

Affirmed.

CRIMINAL LAW — UTTERING AND PUBLISHING — FALSE INSTRUMENTS.

A person who, with intent to injure or defraud, presents as payment a check signed with a fictitious name and drawn on an account that the person had opened under the fictitious name utters and pub-

lishes a false instrument within the meaning of the uttering and publishing statute (MCL 750.249; MSA 28.446).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Edward F. Swinkey*, Prosecuting Attorney, and *Michael G. Roehrig*, Assistant Prosecuting Attorney, for the people.

*Donald R. Cook*, for the defendant on appeal.

Before: JANSEN, P.J., and YOUNG and R. I. COOPER*, JJ.

YOUNG, J. Defendant appeals as of right her guilty plea of uttering and publishing, MCL 750.249; MSA 28.446. In exchange for the plea, the prosecutor agreed to drop a charge of habitual offender, third offense, MCL 769.11; MSA 28.1083. Defendant was sentenced to 1½ to 14 years' imprisonment, to be served consecutively to her sentence for a prior uttering and publishing conviction. Defendant was on parole from the prior sentence when she committed the instant offense. We affirm.

Defendant was charged with uttering and publishing a check drawn on a credit union account she had opened under the fictitious name of Belinda Harris. After having opened the account, defendant presented a check, which she endorsed as Belinda Harris, to a supermarket in the amount of $282.46 to purchase groceries. Defendant acknowledged at her plea hearing that she knew, upon preparation and presentation of the check, that it "wasn't any good." Defendant argues that, because she actually accomplished her fraud on the supermarket by use of a check drawn on

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the account she established in the name of a fictitious person, there was no uttering or publishing violation. Consequently, defendant contends that she was incorrectly charged. We disagree.

Initially, we note that defendant's argument that she was charged under an inapplicable statute was not waived by her guilty plea. *People v New*, 427 Mich 482, 492; 398 NW2d 358 (1986); *People v Kotesky*, 190 Mich App 330, 331; 475 NW2d 473 (1991). "In reviewing the adequacy of the factual basis for a plea, this Court examines whether the factfinder could properly convict on the facts elicited from the defendant at the plea proceeding." *People v Brownfield (After Remand)*, 216 Mich App 429, 431; 548 NW2d 248 (1996), citing *People v Booth*, 414 Mich 343, 360; 324 NW2d 741 (1982).

Defendant relies exclusively on CJI2d 28.2(2) for the proposition that the crime of uttering and publishing requires proof that the check was altered, forged, or counterfeited.[1] We disagree that only an altered, forged, or counterfeited instrument can support the uttering and publishing charge to which defendant pleaded guilty. Michigan's uttering and publishing statute provides:

> Any person who shall utter and publish as true, any false, forged, altered or counterfeit record, deed, instrument or other writing mentioned in [MCL 750.248; MSA 28.445], knowing the same to be false, altered, forged or counterfeit,

---

[1] The text of CJI2d 28.2(2) provides that the prosecution must prove that "the document in question . . . was [altered / forged / counterfeited]." It is well established that the Michigan Criminal Jury Instructions do not have the official sanction of the Michigan Supreme Court. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985). This is especially so when, as here, the instruction conflicts with the plain language of the underlying statute. See MCL 750.249; MSA 28.446.

with intent to injure or defraud as aforesaid, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 14 years. [MCL 750.249; MSA 28.446.]

It is true that most of the reported Michigan cases concerning uttering and publishing involve what might be called the typical forgery wherein the defendant accomplishes the fraud the statute is designed to prevent by stealing a checkbook or credit card of another and then *forging* the true owner's name in order to obtain money or goods.[2] Consequently, it is not surprising that such cases have turned on construction of the statute's forgery provision: "The elements of uttering and publishing require that the defendant knew the instrument was false,

---

[2] In *People v Susalla*, 392 Mich 387; 220 NW2d 405 (1974), the Supreme Court held that "forgery includes 'any act which fraudulently makes an instrument "purport to be what it is not." ' " *Id.* at 390, quoting *In re Stout*, 371 Mich 438, 440-441; 124 NW2d 277 (1963). The Court stated that the essence of forgery is that the "writing itself is a lie." *Susalla, supra* at 392-393.

"In order to constitute forgery there must be a making of a false instrument for the purpose of creating *another's liability*, with fraudulent intent to injure him. Such a forged instrument may be made in various ways, as by creating it entirely, by adding to or taking away from it some of its essential terms, or by procuring the signature of a person who had no intention of signing it." [*Id.* at 392, quoting 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1485, p 1867 (emphasis added).]

The *Susalla* Court found proof of forgery in the defendant's act of signing his own name to a corporate check with the false representation that he had the authority to do so. *Susalla, supra* at 388-389. Therefore, the act of forgery in *Susalla* was in making the checks purport to be something they were not (an order to pay by a corporation). Similarly, in *People v Ford*, 417 Mich 66; 331 NW2d 878 (1982), and *People v Hester*, 24 Mich App 475; 180 NW2d 360 (1970), forgery was committed in the signing of a credit card sales slip on an account that was both opened by and in the name of another person. In *People v Van Horn*, 127 Mich App 489; 339 NW2d 475 (1983), the act of forgery was the act of endorsing another person's name on a bank withdrawal slip without authorization.

that [the defendant] had an intent to defraud, and that [the defendant] presented the forged instrument for payment." *People v Dukes*, 189 Mich App 262, 265; 471 NW2d 651 (1991). These cases have uniformly held that the essence of forgery is the falsity—or falsification of—the instrument. See, e.g., *People v Susalla*, 392 Mich 387, 392; 220 NW2d 405 (1974); *In re Stout*, 371 Mich 438, 440-441; 124 NW2d 277 (1963); *People v Hodgins*, 85 Mich App 62, 65-66; 270 NW2d 527 (1978).

However, as noted, the fraud accomplished by defendant in the instant case does not present a case of forgery; defendant opened an account in a fictitious name, published a check she knew to be worthless, and signed it in the name of the fictitious owner. This conduct, does not, as in the traditional uttering and publishing case, establish a *forgery*, but it does constitute the utterance and publication of a *"false . . . instrument . . . knowing the same to be false"* as prohibited by the quoted express language of the statute. MCL 750.249; MSA 28.446.

Although not cited by defendant, we are aware of our decision in *Hodgins, supra*. The *Hodgins* Court set forth in detail the facts upon which the defendant's forgery conviction was based:

> In November of 1975, defendant rented part of a house from Mr. and Mr.. Leemhuis. After defendant moved, Mrs. Stephany Ann Leemhuis discovered that her driver's license, social security card and car registration were missing from her wallet. It is apparent that defendant had taken them.
>
> Defendant took this identification to the assistant manager of the Sterling Heights branch of the Liberty State Bank and opened a checking account in the name of Stephany A. Leemhuis. The appropriate signature cards were filled in and a small deposit was made.

The assistant manager testified that defendant was considered the owner of the account and only checks matching the signature card she had filled out when opening the account would be honored, if there were sufficient funds in the account. The real Stephany Leemhuis could not draw on the account, nor could defendant using any signature other than Stephany A. Leemhuis.

The charge of forgery is not based on the opening of the checking account as described above. Rather, the charge is based on the fact that defendant used one of the checks she had obtained from the bank when attempting to purchase a TV set. The check was made out and signed by defendant using the signature Stephany A. Leemhuis in an amount exceeding her original deposit by some $280. [*Hodgins, supra* at 63-64.]

The *Hodgins* Court held that, based on this evidence, "[t]here may have been a litany of offenses committed, but not forgery." *Id.* at 65. The Court reasoned as follows:

The check given by defendant did not purport to be anything other than a personal check drawn by the person who presented it on an account that that person had opened. The misrepresentation of identity to the bank in opening the account did not make the creation of a draft on that account a forgery when presented to pay for the television.

Simply stated, the writing itself was not a lie. Under MCL 440.3401; MSA 19.3401, only defendant would be liable on the instrument.[3] This was confirmed by the testimony of the bank representative. The risk of loss to which the store was exposed was the result of the lack of funds in the

---

[3] MCL 440.3401; MSA 19.3401 provides, in relevant part:

(1) A person is not liable on an instrument unless (*i*) the person signed the instrument, or (*ii*) the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under section 3402.

account, not the manner in which the instrument was prepared. [*Id.* at 65-66 (citations omitted).]

We do not find *Hodgins* persuasive because it focused on the *forgery* aspect of the statute to the exclusion of its other provisions. In interpreting a statute, we must give effect to every phrase, clause, and word, if possible. *Jenkins v Great Lakes Steel Corp,* 200 Mich App 202, 209; 503 NW2d 668 (1993). Therefore, on the basis of the evidence presented at the plea hearing, it appears that defendant published an instrument she knew to be false within the meaning of the statute when she presented to the grocer the check she endorsed in the name of a fictitious person and drew on the account she established in the name of a fictitious person. We hold that there were sufficient facts upon which to base defendant's plea of guilty of uttering and publishing.

Defendant also contends that her sentence was disproportionate. We disagree. Defendant's sentence is at the bottom of the sentencing guidelines' recommended minimum sentence range of eighteen to sixty months and, therefore, is presumptively proportionate. *People v Broden,* 428 Mich 343, 354-355; 408 NW2d 789 (1987). Defendant has failed to present any unusual circumstances that would overcome that presumption. *People v Daniel,* 207 Mich App 47, 54; 523 NW2d 830 (1994). Accordingly, defendant is not entitled to resentencing.

Finally, defendant argues that the reoffending-parolee statute, MCL 768.7a(2); MSA 28.1030(1)(2), is unconstitutional because it (1) violates equal protection and (2) mandates the imposition of cruel and unusual punishment in violation of the Michigan and

federal constitutions.[4] However, since defendant did not raise either constitutional challenge below, these issues were not properly preserved for appellate review. *People v Strobridge*, 127 Mich App 705, 714; 339 NW2d 531 (1983); see also *Up & Out of Poverty Now Coalition v Michigan*, 210 Mich App 162, 167; 533 NW2d 339 (1995). In addition, we note that the factual predicate for defendant's argument, this Court's interpretation of § 7a(2) in *People v Young*, 206 Mich App 144; 521 NW2d 340 (1994), has subsequently been reversed by the Supreme Court. *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569; 548 NW2d 900 (1996).[5] For these reasons, we decline to review defendant's constitutional challenges.

Affirmed.

---

[4] MCL 768.7a(2); MSA 28.1030(1)(2) provides that where a person commits a felony while that person is on parole from a sentence for a previous offense, the sentence for the new conviction must be served consecutively to the "remaining portion" of the prior sentence.

[5] Defendant's challenge, in fact, goes to the *severity* of her cumulative sentences under the statute as interpreted in *Young*.