# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 10, 2016

Plaintiff-Appellee,

v

Nos. 324385; 324397
Macomb Circuit Court

STANLEY GREIG DUNCAN,

LC Nos. 2011-004304-FC;
2011-003839-FC

Defendant-Appellant.

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

In Docket No. 324385, defendant appeals by right his convictions, following a jury trial, of first-degree criminal sexual conduct (CSC I), MCL 750.520b(2)(b). Defendant was sentenced to 25 to 40 years' imprisonment for the CSC I conviction. In Docket No. 324397, defendant appeals by right his convictions, following a jury trial, of four counts of CSC I, MCL 750.520b(2)(b), and four counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(2)(b). Defendant was sentenced to 25 to 40 years' imprisonment for each CSC-I conviction and 71 months to 15 years' imprisonment for each CSC-II conviction. Defendant's appeals were consolidated by this Court.[1] We affirm his convictions in both dockets and remand for resentencing in Docket No. 324385.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's sexual molestation of three female children while they were attending a daycare service operated by his wife and codefendant at trial, Vita Duncan. The victims are: (a) RS, born in 2008, (b) KN, born in 2007, and (c) SP, born in 1992. In Docket No. 324385, defendant was charged with one count of CSC I arising from an incident at the daycare with SP. In Docket No. 324397, defendant was charged with four counts of CSC I, two counts pertaining to RS and the remaining two counts pertaining to KN, and four counts of CSC II, again two counts pertaining to RS and the remaining two counts pertaining to KN. The incidents involving RS and KN were alleged to have occurred between January 15, 2009 and

---

[1] *People v Duncan*, unpublished order of the Court of Appeals, entered November 5, 2014 (Docket Nos. 324385; 324397).

June 21, 2011. The incident involving SP was alleged to have occurred between June and August of 1998. Defendant's appeals center on the admission of testimony of and regarding the minor victims, as well as sentencing issues.

## A. ADMISSION OF TESTIMONY REGARDING RS

Prior to trial,[2] the trial court preliminarily ruled that statements made by RS to her parents regarding the molestation were admissible under the "tender years" exception to the hearsay rule, MRE 803A, holding that the statements were spontaneous as required by MRE 803A(2) and that the delay in making the statements was excusable under MRE 803A(3). RS's father then testified at trial that RS made statements that defendant had touched and placed his mouth on RS's "privates" at day care. RS's father also reported that RS had stated that defendant also had touched KN. RS's mother also testified to the statements made by RS.

RS, four years old at the time of trial, had previously been qualified to testify at the preliminary examinations of both defendant and Vita. However, after questioning RS, the trial court found RS not qualified to testify at trial. The prosecution requested that RS be deemed unavailable under MRE 804(a)(3) and that her preliminary examination testimony be admitted. Defense counsel objected, asserting that RS's disqualification was not premised on a lack of memory and further that counsel for defendant and Vita had been denied the ability to engage in a full cross-examination of RS, each having not attended the codefendant's preliminary examination. The trial court ruled that RS's preliminary examination testimony was inadmissible, determining that RS was not "unavailable" under MRE 804 and further that admission of RS's testimony would violate Confrontation Clause as stated in *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

The prosecution sought an interlocutory appeal of the trial court's ruling. Although the trial court initially denied a stay of proceedings, the proceedings were ultimately stayed under an order of our Supreme Court, which directed this Court to consider the prosecution's appeal. *People v Duncan*, 493 Mich 867; 820 NW2d 929 (2012). This Court affirmed the trial court's ruling in an unpublished opinion, agreeing with the trial court that RS's lack of competency to testify under MRE 601 did not render her unavailable for purposes of MRE 804(a)(4).[3] Our Supreme Court disagreed, however; providing a detailed analysis of the language of MRE 804(a), the Court held:

> Under the plain language of the rule, and with our recognition of the unique mental and emotional limitations of youth, we hold that RS had a then existing

---

[2] All of the charges against defendant and his wife, Vita, were addressed in a single, joint jury trial. Vita was tried on an aiding and abetting theory regarding defendant's commission of CSC as well as violations related to her operation of a child care facility. Vita is not a party to this appeal.

[3] *People v Duncan*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2012 (Docket Nos. 312637; 312638), p 1, lv gtd and vacated in part 493 Mich 926 (2013).

mental infirmity in this case because the facts show that she was unable to sufficiently cope with her significant emotional distress and give testimony at trial, a result of her particularly young age. Therefore, she was unavailable within the plain meaning of MRE 804(a)(4). [*People v Duncan*, 494 Mich 713; 835 NW2d 399 (2013).]

The Supreme Court thus reversed this Court and remanded the matter to the trial court to "determine whether RS's preliminary examination testimony satisfied the requirements of MRE 804(b)(1) and, if so, whether admission of that testimony would violate defendants' rights under the Confrontation Clause." *Id*. at 730.

Following the ruling of our Supreme Court, several hearings were conducted by the trial court involving a multitude of motions seeking dismissal of the action or exclusion of other testimony. In accordance with the directive of our Supreme Court, the trial court issued an opinion and order on December 6, 2013, and held that the admission of RS's preliminary examination testimony satisfied both MRE 804(b)(1) and the Confrontation Clause. The trial court further held that the preliminary examination transcript pertaining to defendant was admissible against Vita and vice-versa. RS's preliminary examination transcripts from October 17, 2011 and December 2, 2011 were read to the jury.

## B. ADMISSION OF EVIDENCE REGARDING KN

KN, five years old at the time of trial, was qualified to testify at trial and testified that defendant had touched her genitals on more than one occasion. KN's mother and father both testified that, after RS's parents apprised them of RS's statement that defendant had touched KN's genitals, KN was interviewed twice by a forensic interviewer. At the first interview, KN did not allege any molestation by defendant or Vita. After the first interview, staff of the forensic interviewing facility provided KN's parents with a pamphlet entitled, "Keeping My Body Safe," to read to KN and assist in familiarizing KN with private body areas. After KN's parents read her the book for the first time, KN told them that defendant had touched her genitals on a number of occasions. KN's mother and father both testified to the content of these statements under the "tender years" exception. Although defendant had opposed the admission of RS's statements to her parents, defendant does not appear to have raised a separate challenge to the introduction of KN's statements to her parents.

## C. SENTENCING

Defendant was sentenced on the charge of CSC I involving SP according to the current version of MCL 750.520b(2)(b), which provides for sentencing "[f]or a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years." The incident involving SP was alleged, according to the felony information, to have occurred in 1998. The version of the statute at the time of the offense did not contain a minimum term of imprisonment. See MCL 750.520b prior to amendment by 2002 PA 714 and 2006 PA 169.

## II. ADMISSIBILITY OF RS'S PRELIMINARY EXAMINATION TESTIMONY

Defendant initially argues that the trial court's determination that the preliminary examination testimony of RS was admissible violated his right of confrontation under *Crawford* and MRE 804(b)(1). Defendant challenges the admission of RS's testimony from both his and Vita's preliminary examinations.

We review a trial court's admission of evidence for an abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). When decisions pertaining to the admission of evidence encompass preliminary questions of law such as whether a rule of evidence or statute precludes admissibility, we review such questions de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

We review issues of constitutional law de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). A preserved constitutional error under the Confrontation Clause is deemed to be harmless if it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty despite the error. *People v Shepherd*, 472 Mich 343, 347-348; 697 NW2d 144 (2005). Factors to be considered when determining if an error is harmless include the importance of the witness's testimony and the strength of the prosecution's case. *People v Kelly*, 231 Mich App 627, 644-645; 588 NW2d 480 (1998).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." US Const, Am VI; see also Const 1963, art 1, § 20. "The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness." *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008) (quotation marks and citation omitted). In general, the Confrontation Clause precludes the admission of testimonial statements elicited from witnesses if the witnesses fail to appear at trial unless the defendant had a prior opportunity to cross-examine the witnesses. *Crawford*, 541 US at 59. Statements made during a preliminary examination are testimonial in nature and, therefore, implicate the Confrontation Clause. *Id*. at 68.

The admission of preliminary examination testimony at trial has been found to not violate a defendant's right of confrontation if the witness is unavailable to testify at trial, the prosecution can demonstrate due diligence in trying to produce the absent witness, and the testimony meets satisfactory indicia of reliability. *People v Bean*, 457 Mich 677, 682-683; 580 NW2d 390 (1998). As such, a trial court may admit preliminary examination testimony "at trial under both MRE 804(b)(1) and the Confrontation Clause as long as the witness is unavailable for trial and was subject to cross-examination during the prior testimony." *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009), citing *Crawford*, 541 US 36. Similarly, MRE 804 provides, in relevant part:

(b) **Hearsay Exceptions**. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony.  Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

The unavailability of RS as a trial witness under MRE 804(a) has already been determined by our Supreme Court, and is thus the law of the case.  *People v Fisher*, 449 Mich 441, 444-445; 537 NW2d 57 (1995).  And defendant does not argue that the prosecution did not exercise due diligence in attempting to secure RS's testimony at trial.  The question thus becomes whether RS was subjected to adequate cross-examination at the preliminary examinations.

It is undisputed that RS was presented and qualified to testify at the preliminary examinations of defendant and Vita.  The dispute, in part, centers on defendant's motive and opportunity to develop the testimony of RS under cross-examination.  This Court stated in *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007), that "[w]hether a party had a similar motive to develop the testimony depends on the similarity of the issues for which the testimony was presented at each proceeding."  Some factors that are relevant to the determination that a similar motivation existed in the examination of a witness at a prior proceeding include:

(1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities).  [*Id*. at 278 (quotation marks omitted).]

In addition, a defendant's right to cross-examination is not unlimited; a defendant does not have "an unlimited right to admit all relevant evidence or cross-examine on any subject[;]" however, a defendant is "guaranteed a reasonable opportunity to test the truth of a witness' testimony." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993).

RS's testimony at defendant's and Vita's preliminary examinations was focused on the same purpose, i.e., "to determine if a crime has been committed, and, if so, if there is probable cause to believe the defendant committed it." *People v Johnson*, 427 Mich 98, 104; 398 NW2d 219 (1986) (citation and quotation marks omitted).  At defendant's preliminary examination, defense counsel frequently interjected during the direct examination of RS to seek clarification of her testimony and the record.  Defense counsel was able to cross-examine RS regarding her familiarity with defendant, and to question RS regarding defendant's actions, where they occurred both in terms of a location within the daycare and on RS's body, and her response to those events.  Defense counsel eventually declined to pose any further questions to RS, despite having the opportunity to do so.  Although defense counsel, at defendant's preliminary examination, elected to limit his questioning of RS and may have preferred, at trial, to ask her additional or different questions, counsel was not denied the opportunity to effectively cross-examine RS at the preliminary examination.  In addition, at the preliminary examination, defendant's motive was similar to that evinced at trial – to raise issues regarding credibility

-5-

based on RS's young age and to suggest inconsistency in her testimony. Hence, defendant has not established that he lacked a reasonable opportunity to challenge the truth of RS's testimony at his preliminary examination. See *Adamski*, 198 Mich App at 138.

Further, the admissibility of RS's testimony under MRE 804(1)(b) was sufficient to satisfy the Confrontation Clause. "Because MRE 804(b)(1) is a hearsay exception firmly rooted in American jurisprudence, the Confrontation Clause is satisfied when the complainant's prior testimony is admitted because that testimony bears satisfactory indicia of reliability, without more." *Adams*, 233 Mich App at 659-660. Second, contrary to defendant's argument, the Supreme Court has determined that the Confrontation Clause serves only to guarantee a defendant an opportunity for cross-examination, but does not mandate "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (citation omitted). RS's testimony at defendant's preliminary examination thus satisfied both MRE 804(b)(1) and the Confrontation Clause.

Defendant's attorney was not present at Vita's preliminary examination; however, Vita's counsel cross-examined RS. Preliminarily, RS indicated familiarity with defendant and Vita through attending daycare. Some of the questioning directed at RS on direct examination focused on Vita's presence during the incidents and her ability to observe defendant's actions. Vita's defense counsel, on cross-examination of RS, touched on the frequency of defendant's alleged inappropriate behavior with RS, but primarily questioned RS regarding Vita's presence and whether RS had told Vita or her parents about defendant's actions.

On a most superficial level, defendant is correct that he lacked the opportunity to cross-examine RS at Vita's preliminary examination, based on his absence from that proceeding, which runs afoul of the plain language of MRE 804(b)(1). Defendant is also correct that while the motivation of Vita's counsel and defendant's counsel overlapped to a significant degree at the preliminary examinations, their motivations were not identical. Although Vita's counsel, similar to defendant's counsel, sought to demonstrate that RS was not credible and that the events did not occur, the focus of Vita's defense counsel was on demonstrating that Vita was either not present or completely unaware and lacked knowledge of defendant's behaviors, if such behaviors by defendant did occur. Therefore, we conclude that the admission of RS's testimony from Vita's preliminary examination against defendant was erroneous and violated MRE 804(b)(1).

However, defendant acknowledges that during his interrogation by police, defendant admitted having engaged in the various behaviors that resulted in the charges and convictions procured. Defendant's police interrogation was played for the jury at trial. Further, RS's testimony at defendant's preliminary examination was properly admitted. As a result, it is highly unlikely that the admission of RS's testimony from Vita's preliminary examination was outcome determinative. The admission of RS's testimony from Vita's preliminary examination is therefore harmless error and does not require reversal. *Shepherd*, 472 Mich 347-348.

### III. ADMISSION OF "TENDER YEARS" STATEMENTS

Defendant argues that KN's statements to her parents were not spontaneous and thus should not have been admitted at trial. Defendant also argues that the trial court erred in admitting the testimony by RS's mother and KN's father regarding the children's statements to them as being contrary to MRE 803A, which permits only the first corroborative statement to be admissible.

As discussed in *People v Douglas*, 496 Mich 557, 573-574; 852 NW2d 587 (2014) (citations and quotation marks omitted):

> MRE 803A codified the common-law tender years exception, and provides, in relevant part:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

> (1) the declarant was under the age of ten when the statement was made;

> (2) the statement is shown to have been spontaneous and without indication of manufacture;

> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

> (4) the statement is introduced through the testimony of someone other than the declarant.

> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

The reasoning underlying the preference for a child's first statement over subsequent statements is premised on the recognition that "[a]s time goes on, a child's perceptions become more and more influenced by the reactions of the adults with whom the child speaks." *People v Katt*, 468 Mich 272, 296; 662 NW2d 12 (2003).

Defendant argues that KN's statements to her parents do not meet the spontaneity requirement of MRE 803A, suggesting that they were prompted by reading (to KN) material supplied by Care House. Our Supreme Court has recognized several types or forms of spontaneous statements for purposes of MRE 803A. The first type of statement is described as "impulsive" and "is prototypically spontaneous because it appears to 'come out of nowhere' or 'out of the blue.' " *Gursky*, 486 Mich at 610. The second type is comprised of "[s]tatements that are made as a result of prompt, plan, or questioning by a third party, yet are in some manner atypical, unexpected, or do not logically follow from the prompt are also widely considered spontaneous. This type of 'non sequitur' statement is generally considered spontaneous because

it shows that the declarant was acting from natural impulses or tendencies by responding atypically to what may otherwise have been innocent prompts." *Id*. at 610-611. "A third category that poses closer questions involves cases where statements are given as a result of open-ended and nonleading questions that include answers or information outside the scope of the questions themselves. Often, this type of unplanned yet responsive statement may be considered 'spontaneous' because the information that results is based on knowledge independent of that provided in the question." *Id*. at 611.

Our Supreme Court has held that the posing of questions by an adult does not "automatically render[] a statement 'nonspontaneous' and thus inadmissible under MRE 803A." *Gursky*, 486 Mich at 614. "Open-ended, nonleading questions that do not specifically suggest sexual abuse do not pose a problem with eliciting potentially false claims of sexual abuse. But where the initial questioning focuses on possible sexual abuse, the resultant answers are not spontaneous because they do not arise without external cause." *Id*. at 614-615. As a result, trial courts are required to "review the totality of the circumstances surrounding the statement in order to determine the issue of spontaneity." *Id*. at 615. Specifically:

> Even though courts should look at the surrounding circumstances and larger context in order to understand whether the statement was spontaneously made, we note that this review is not solely determinative of the question of admissibility. As MRE 803A requires, the statement must be "shown to have been spontaneous and without indication of manufacture." The language of MRE 803A(2) clearly demonstrates that spontaneity is an independent requirement of admissibility rather than one factor that weighs in favor of reliability or admissibility. Thus, even if, considering the totality of the circumstances, the trial court determines that a statement is spontaneous for the purposes of MRE 803A(2), it must nevertheless also conduct the separate analyses necessary to determine whether the statement meets the other independent requirements of MRE 803A. [*Id*. at 615-616 (citations omitted).]

In this instance, KN had been the subject of a forensic interview. As a result of the child's lack of familiarity with private body areas, KN's parents were provided with material to read to the child that would assist KN with the necessary vocabulary and comprehension for another interview. Immediately upon the reading of the material to KN, KN indicated that defendant had touched her genitals on more than one occasion. The record does not indicate that KN's parents actually prompted KN's response or allegations through questioning. Although the written materials read to KN did provide a form of prompt for KN's disclosures, reviewing the totality of the circumstances, and considering testimony from KN's father that the pamphlet did not describe specific sexual abuse scenarios, such as an adult putting their hand down a child's pants, we conclude that KN's testimony satisfied the spontaneity requirement of MRE 803A. Further, any error in the admission of this testimony was harmless given both KN's testimony at trial and defendant's admissions to police. Based on this evidence, it is clear beyond a reasonable doubt that a rational jury, as did the one involved in this case, would have found defendant guilty despite the error in admitting the challenged testimony. *Shepherd*, 472 Mich at 348.

Defendant also argues that the testimony of RS's mother and KN's father was inadmissible because they comprised subsequent corroborative statements under MRE 803A. Although there was only a short time between the revelations made by RS and KN to a parent and the subsequent repetition of those statements to their other parent, this does not render the challenged statements a mere continuation of the initial disclosure and is contrary to the purpose of MRE 803A to minimize the potential influence of adult reactions with regard to subsequent disclosures. Hence, the trial court erred in permitting both parents for RS and KN to testify regarding the children's initial statements.

However, with regard to KN, her father's testimony was cumulative of KN's testimony at trial. Inadmissible evidence that is cumulative of other admissible evidence is generally construed to be harmless. *People v Matuszak*, 263 Mich App 42, 52; 687 NW2d 342 (2004); *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996). With regard to the testimony of RS's mother, the admission of this testimony, although not merely cumulative, was harmless considering defendant's confession regarding the charges pertaining to RS. *Matuszak*, 263 Mich App at 52; *Rodriquez*, 216 Mich App at 332.

IV. SENTENCING

Finally, defendant argues that he is entitled to resentencing regarding his CSC I conviction pertaining to SP because the alleged incidents occurred before the amendment of the relevant statute and the statutory imposition of a 25-year minimum sentence. We agree.

To preserve a constitutional challenge for appellate review, a defendant is required to have initially raised the issue in the trial court. *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). Defendant failed to raise as an argument in the trial court that the application of MCL 750.520b(2)(b) violated the ex post facto clauses of the United States and Michigan Constitutions, and deprived defendant of his procedural due process rights; therefore, this argument is not preserved for appellate review. *Id*. Similarly, to preserve a challenge to a trial court's interpretation or application of a statute, a defendant must first raise the argument in the trial court. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Defendant failed to argue below that the trial court improperly applied MCL 750.520b(2)(b) retroactively; therefore, this argument is not preserved on appeal. We review unpreserved claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Currently, MCL 750.520b(2)(b) provides as punishment for CSC I: "For a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age by imprisonment for life or any term of years, but not less than 25 years." It is undisputed that defendant was sentenced in accordance with this statutory provision for his CSC I convictions. The incident involving SP was alleged to have occurred in 1998. Earlier versions of the statute did not contain a minimum term of imprisonment. See MCL 750.520b(2)(b) prior to amendment by 2002 PA 714; 2006 PA 169, effective August 28, 2006.

Laws may violate the ex post facto clauses of the Federal and Michigan Constitutions, US Const, art I, § 10; Const 1963, art 1, § 10, if "(1) they attach legal consequences to acts before their effective date, and (2) they work to the disadvantage of the defendant." *People v*

*Callon*, 256 Mich App 312, 318; 662 NW2d 501 (2003). Specifically, this Court has identified four circumstances that implicate the Ex Post Facto Clauses:

> A statute that affects the prosecution or disposition of criminal cases involving crimes committed before the effective date of the statute violates the Ex Post Facto Clauses if it (1) makes punishable that which was not, (2) makes an act a more serious criminal offense, (3) increases the punishment, or (4) allows the prosecution to convict on less evidence. [*Riley v Parole Bd*, 216 Mich App 242, 244; 548 NW2d 686 (1996).]

"The critical question [for an ex post facto violation] is whether the law changes the legal consequences of acts completed before its effective date." *Weaver v Graham*, 450 US 24, 31; 101 S Ct 960; 67 L Ed 2d 17 (1981). "[A]though the Ex Post Facto Clause does not apply directly to the judiciary, it applies by analogy through the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution." *People v Potts*, 436 Mich 295, 300; 461 NW2d 647 (1990).

"Generally, a criminal defendant is sentenced according to the statute in force at the time he committed the crime." *People v Sinistaj*, 184 Mich App 191, 202; 457 NW2d 36 (1990). "An amendment to a criminal statute which concerns sentences or punishment is not retroactive." *Id*. The prosecution suggests that defendant has failed to demonstrate that his sentence under the subsequent statutory amendment has placed him at a disadvantage, given that his sentence for the CSC I conviction pertaining to SP is one of five convictions for CSC I, resulting in concurrent sentences. "For purposes of ex post facto analysis, the question is whether, if applied retroactively, the amendment would effect any pertinent substantive change that disadvantages the defendant." *United States v Smith*, 362 US App DC 415, 420; 374 F3d 1240 (2004) (quotation marks and citation omitted). We decline to hold that the imposition of a mandatory 25-year minimum sentence, even to be served concurrently to other sentences, is not a disadvantage to defendant. Accordingly, defendant must be resentenced for his CSC I convicting regarding SP, because it amounted to plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

We affirm defendant's convictions in both dockets. In Docket No. 324385, we remand to the trial court for resentencing on defendant's conviction of CSC I with regard to SP. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering