*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KENNETH MICHAEL RONOWSKI,

        Defendant-Appellant.

UNPUBLISHED
June 04, 2026
10:58 AM

No. 372341
Oakland Circuit Court
LC No. 2023-283602-FH

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Defendant, Kenneth Michael Ronowski, challenges the sufficiency of the evidence underlying his uttering-and-publishing conviction, which arose from his tendering a fraudulent rent check. We disagree and affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Seeking to thwart collection efforts by his landlord, Shelli Eiswerth, defendant wrote a check to her for overdue rent which on its face appeared valid. The check bore defendant's signature and was purportedly from his company's bank account. Eiswerth tried depositing the check, but it "bounced." When confronted, defendant claimed ignorance as to why the bank rejected the check.

Several months—and unfulfilled promises of payment from defendant—later, Eiswerth reported defendant's conduct and provided the check to police. Defendant admitted to writing the bad check. Despite claiming to have proof of his attempts to make good on the rejected check through electronic payments to Eiswerth, defendant never provided it. Instead, he sent the investigating officer an e-mail explaining that he was not personally liable for a check written on behalf of his business, and Eiswerth's recourse was to take the matter to small claims court.

On the basis of the false check, the prosecution ultimately charged defendant with one count of uttering and publishing, MCL 750.249, and an alternative count of drawing a check upon a bank without a bank account, MCL 750.131a(1). The jury convicted him of the former, and the

-1-

trial court sentenced him to 1 to 14 years' imprisonment, with two days' credit for time served. Defendant now appeals by right.

## II. ANALYSIS

In his sole argument on appeal, defendant challenges the sufficiency of the evidence supporting his uttering-and-publishing conviction.

"This Court reviews de novo a challenge to the sufficiency of the evidence supporting a conviction." *People v Parkinson*, 348 Mich App 565, 573; 19 NW3d 174 (2023). In so doing, "this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could conclude that the prosecution proved all the essential elements of the crime beyond a reasonable doubt." *People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013). This is a deferential standard of review, under which the reviewing court "is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). Notably, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). And if that element involves determining the defendant's intent, minimal circumstantial evidence and reasonable inferences can suffice. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

As relevant to this case, an uttering-and-publishing conviction under MCL 750.249(1) requires the prosecution to prove three elements: (1) the defendant's knowledge the instrument was false, (2) the defendant's intent to defraud, and (3) presentation of the false instrument for payment. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).[1] Defendant challenges the sufficiency of the evidence supporting his conviction as to the first two elements, claiming the prosecution failed to demonstrate beyond a reasonable doubt that the check was not associated with an account (and, presumably, therefore false) or that he intended to defraud Eiswerth.[2] We disagree in each instance.

---

[1] Our caselaw often identifies the third element as "presentation of the *forged* instrument for payment." See, e.g., *Johnson-El*, 299 Mich App at 652 (quotation marks and citation omitted; emphasis added). However, MCL 750.249(1) also prohibits the utterance and publication of false, altered, or counterfeit instruments. See also M Crim JI 28.2; *People v Hogan*, 225 Mich App 431, 433-435, 437; 571 NW2d 737 (1997) (discussing the focus on uttering-and-publishing violations based in forgery but applying the statute to false instruments). In this case, the prosecution based its case on a *false* instrument, not a forged one.

[2] Defendant also seems to challenge the origin of the check, stating that Eiswerth "allegedly received" or "purported to receive" it. Yet he simultaneously claims he "made no secret of the source of the check . . . ." Regardless, to the extent he challenges any other aspects of the evidence against him, his failure to adequately brief such arguments renders them abandoned. *People v Kroll*, 341 Mich App 217, 236 n 15; 989 NW2d 822 (2022).

Take first defendant's contention that he lacked requisite knowledge that the instrument was false. The prosecution presented sufficient evidence that the check was not associated with a bank account by demonstrating that the drawee bank rejected the check for failure to locate an account associated with it. An employee of that bank testified that the only verifiable information on the check was the bank's publicly available routing number. She found no account in the bank's system associated with the account number, defendant, or his business. Other witness testimony also provided reasonable bases from which to infer the check was not bank issued in connection with an account. For example, Eiswerth described a friend's suspicions regarding the check's authenticity due to the unusual thinness of its paper. And defendant's son claimed he had never seen defendant write or pay with a check, insisting defendant "doesn't write checks." Viewing this evidence in a light most favorable to the prosecution, a rational jury could conclude beyond a reasonable doubt that the check was not associated with an active account.

Disagreeing, defendant emphasizes that: (1) he ran a business with the name appearing on the check; and (2) the bank employee acknowledged the bank's system only retrieved information for accounts created within the previous 10 years, such that she could not say defendant's business *never* had an account there. But that would require us to set aside the reasonable inferences we must draw from the jury's verdict. *Oros*, 502 Mich at 239. For example, even assuming defendant opened an account at the bank in his business's name more than 10 years earlier, a jury could still reasonably infer that such account was inactive (and thus unable to be drawn against) when he wrote the check.

Defendant's challenge to the evidence establishing his intent to defraud fares no better. The prosecution presented sufficient evidence demonstrating defendant's intent to defraud—that is, that he "acted with an intent to cheat or deceive." *Miller*, 326 Mich App at 735. Eiswerth's testimony situated defendant's provision of the false check within a larger pattern of avoiding rent payments. According to her, defendant only ever paid a portion of his first month's rent; responded to her months-long attempts to collect his outstanding (and ever-increasing) rent obligations with unfulfilled promises to pay; and offered excuses or claimed ignorance as to why each alleged payment attempt and method—including the check—failed. These promises and excuses, Eiswerth explained, induced her to give him additional time to pay.

As to the false check, Eiswerth testified that defendant claimed not to know the reason for its rejection. Yet as discussed, documentary evidence and witness testimony provided a clear explanation: the check was not associated with an active bank account (and may never have been). Testimony from the investigating officer further highlighted defendant's unsubstantiated claims that he tried making good on the check's rejection through electronic payments; instead of providing proof, defendant merely denied personal liability. And though defendant's son claimed he saw defendant's attempts to pay Eiswerth, such testimony presents a credibility issue we must resolve in favor of the jury's verdict. *Oros*, 502 Mich at 239.

Viewed in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that defendant intended to defraud Eiswerth. A jury could reasonably infer that defendant gave Eiswerth the check knowing it was not associated with an active account, intending to cheat her out of rent money and deceive her into believing he had finally fulfilled his rent obligations. And that in so doing, defendant intentionally frustrated Eiswerth's attempts to collect and prolonged his ability to stay in the home without paying.

Defendant again disagrees, instead offering innocent conclusions he believes a jury could reach from this and other evidence. But the prosecution does not have to disprove "every reasonable theory" of defendant's innocence; rather, "it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *People v Darga*, 349 Mich App 1, 14; 27 NW3d 298 (2023) (quotation marks and citations omitted). And considering defendant does not challenge the relevance or admissibility of the trial evidence, "it does not matter that the evidence gives rise to multiple inferences or further inferences; it is for the jury alone to determine what inferences to draw." *People v Haynes*, 338 Mich App 392, 423; 980 NW2d 66 (2021). The jury's guilty verdict indicates that it inferred an intent to defraud from the trial evidence, rather than any of the innocent explanations defendant asserts on appeal.

In sum, the prosecution presented sufficient evidence to sustain defendant's conviction.

III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense